UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FORDEC REALTY CORP.,

                     Plaintiff,

                v.

TRAVELERS EXCESS AND SURPLUS LINES
COMPANY,

                   Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

18-CV-85 (ALC) (KNF)



KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Before the Court are: (1) defendant Travelers Excess and Surplus Lines Company's ("Travelers") "Motion to Strike Plaintiff Fordec Realty Corp.'s ['Fordec'] Expert Disclosures and Preclude Expert Witness Testimony," Docket Entry No. 65; and (2) the plaintiff's motion for an order "confirming that Plaintiff has complied with all FRCP expert disclosure, alternatively granting Plaintiff leave to serve an Amended/Supplemental Expert Disclosure, extending the time to complete discovery," Docket Entry No. 67.

### DEFENDANT'S MOTION

The defendant contends that the October 18, 2018 revised scheduling order directed the plaintiff to submit its expert disclosures and expert witness reports on or before November 30, 2018, and the defendant to submit its expert disclosures and expert witness reports on or before December 21, 2018. The plaintiff served its "Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2)" on November 30, 2018. The defendant served its "Disclosure of Expert Witness Pursuant to Fed. R. Civ. P. 26(a)(2)" and sought, by a letter, a pre-motion conference to address deficiencies in the plaintiff's expert disclosure. The Court denied the pre-motion request for a conference, noting that the disclosure deficiencies alleged in the defendant's letter are addressed

1

by the sanction provided in Fed. R. Civ. P. 37(c)(1), which is a self-executing sanction. On January 4, 2019, the plaintiff served its "Supplemental Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2)." The plaintiff failed to comply with Fed. R. Civ. P. 26(a)(2)(B) because it did not provide an appropriate report prepared by the experts identified, John T. Walsh ("Walsh") and Aranit Ametaj[1] ("Ametaj"). With respect to Walsh, the defendant contends that the plaintiff

> only included 13 pages of notes apparently prepared by Mr. Walsh on November 29, 2018, and those notes are limited to a calculation of Fordec's purported damages. Fordec's expert disclosures, however, do not state that Mr. Walsh's expert testimony will be limited to the issue of damages. Instead, Fordec states that Mr. Walsh will provide expert testimony about such things as: (1) the condition of the property; (2) causation; (3) shoring and mitigating efforts; (4) design, scope, and repairs of the alleged damage to restore it to its pre-loss condition; and (5) the work performed by various subcontractors and the interaction with governmental departments and/or agencies. (*See* Haas Dec. at Exhibit A). None of these topics are [sic] addressed in the notes prepared by Mr. Walsh. In any event, the notes included with Fordec's expert disclosures simply do not qualify as a written expert report under Rule 26.

The defendant asserts that the plaintiff attempted to cure some of the deficiencies by serving its "supplemental" disclosure, which provided general information about Walsh's qualifications and a statement about his compensation, but failed to include: (1) "a complete statement of all opinions the witness will express and the basis and reasons for them"; and (2) "the facts or data considered by the witness in forming them." Moreover, the plaintiff refused to identify any exhibits that will be used to summarize the expert's opinions; instead, it included in its "supplemental" disclosure a vague "summary of exhibits," namely, "photographs, NYC DOB filed documents; emails, invoices, and correspondence already submitted and exchanged." Concerning Ametaj, the plaintiff failed to provide any report and attempted to cure this defect in its "supplemental" disclosure, which included the same notes submitted previously

---

[1] Although the plaintiff identified Aranit Ametaj as its expert in its initial expert disclosure, in its supplemental expert disclosure, the plaintiff refers to that person both as Aranit Ametaj and Aranit Ahmetaj. The Court will refer to the plaintiff's expert by the name that appears in the plaintiff's initial expert disclosure: Ametaj.

2

as Walsh's expert report, except that Ametaj signed his name at the end. The plaintiff's expert disclosures contain bald and conclusory statements and generalizations about the topics on which the experts will testify, without any ultimate conclusions or the bases and reasons for such conclusions. Since the plaintiff failed to provide an appropriate written report prepared by its experts and provided no valid reason why the reports were not provided, its failure is not substantially justified or harmless.

The defendant contends that the plaintiff designated improperly witnesses Ronald Ogur, P.E. ("Ogur") and Cynthia Laracuente ("Laracuente") as Fed. R. Civ. P. 26(a)(2)(C) witnesses and asserted they were not required to prepare reports because the plaintiff did not "initially" engage them. However, the plaintiff's "pre-suit engagement of its experts does not, in and of itself, qualify them as witnesses who do not need to prepare a report under Fed. R. Civ. P. 26(a)(2)(C)." Moreover, Ogur and Laracuente have been retained by the plaintiff for the purpose of providing expert testimony in this case, regardless of their pre-litigation involvement, since the plaintiff's supplemental expert disclosure indicates the amounts they will be charging for their testimony and the plaintiff "claims that its purported expert witnesses will testify about, among other things, 'causation.'" The defendant maintains that

> it is apparent that Fordec intends to have these witnesses provide expert testimony about things other than the facts of the pre-litigation work they purportedly performed at Fordec's request. The abbreviated disclosures provided by Fordec, however, have not only prevented Travelers from discovering the ultimate conclusions of the experts, but from being able to sufficiently test the experts' opinions during focused depositions. It is significant that neither Fordec's initial expert disclosure, nor its supplemental expert disclosure actually contain [sic] the witnesses' ultimate conclusions. Rather, the disclosures describe the nature of the testimony in broad, vague terms without specifics (other than the handwritten scope of repair prepared by Mr. Walsh). Thus, Travelers is left to guess what the witnesses will testify about.

3

Even assuming that Ogur and Laracuente "could qualify as experts who do not need to provide a written report, their testimony should be limited to the facts acquired and opinions formed during their pre-litigation work for Fordec." Furthermore, even if Fed. R. Civ. P. 26(a)(2)(C) applies to Ogur and Laracuente, "Fordec still failed to comply with that rule by not providing 'a summary of the facts and opinions to which the witness is expected to testify.' Fordec's expert disclosures provide only the general subject matter of the expert testimony, rather than setting forth the specific facts to be relied upon and specific opinions to be given."

The defendant asserts that the plaintiff's supplemental expert disclosure should be stricken as untimely because Fed. R. Civ. P. 26(e) "is not a vehicle to permit a party to serve a deficient opening disclosure and then attempt to remedy any deficiencies through the issuance of a 'supplemental' disclosure." According to the defendant, "all of the 'new' information contained in Fordec's supplemental expert disclosure is information that was available to Fordec and its experts at the time the initial expert disclosure was served, and there is no reason that it was not contained in Fordec's initial disclosure." For example,

> Fordec's initial expert disclosure stated, in part, that John T. Walsh, P.E. is expected to testify that "as the girder, column and connection were all encased in concrete the progressive deterioration may not have been recognized as a situation that would lead to failure mode." (*See* Haas Dec. at Exhibit A, p.3) Fordec's supplemental expert disclosure expands on the information previously provided and states (still quite vaguely) that Mr. Walsh is expected to testify that "the paired girders, column and common connection at the 2nd floor were all encased in concrete, rust stains and cracks in the concrete fireproofing existed in many places, but these were not evidence of impending collapse, the progressive deterioration may not have been recognized as a situation that would lead to failure mode." (*Id.* at Exhibit C, p.3) Fordec's supplemental expert disclosure is replete with similar revisions, all of which are patently improper. . . . Importantly, none of the additional information contained in Fordec's "supplemental" expert disclosure is "new." Instead, it is clear that Fordec's supplemental disclosure was improperly issued in an attempt to cure deficiencies in its initial expert disclosure–a disclosure Fordec admits it rushed to serve–, and to bolster and expand upon the information and testimony that Fordec claims will be provided by its experts.

The defendant contends that sanctions pursuant to Fed. R. Civ. P. 37 remain appropriate because "there is absolutely no justification for Fordec's failure to comply with Rule 26(a)(2)," and the plaintiff's exposure to sanctions "is entirely of its own doing," since the plaintiff: (i) made a strategic decision when it opted not to have its designated experts prepare written reports in an attempt to comply with the scheduling deadline; and (ii) failed to request an extension of time to provide an appropriate expert disclosure, rather than serving "a patently-deficient disclosure that failed to comply with either Rule 26(a)(2)(B) or 26(a)(2)(C)." The defendant seeks an order striking the plaintiff's supplemental expert disclosure and precluding Walsh, Ametaj, Ogur and Laracuente from testifying as experts at trial, pursuant to Fed. R. Civ. P. 37(c)(1).

In support of its motion, the defendant submitted a declaration by its attorney, Marc E. Haas, with exhibits: (A) "the January 18, 2019 Declaration of David Karel" ("Karel"); (B) "Plaintiff's November 30, 2018 Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2)"; (C) "the December 21, 2018 letter (without exhibits) filed with the Court on behalf of Travelers"; (D) "Plaintiff's January 4, 2019 Supplemental Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2)"; (E) "the January 7, 2019 letter (without exhibits) filed with the Court on behalf of Travelers"; and (F) "Plaintiff's January 8, 2019 response to Traveler's January 7, 2019 letter (without exhibits)."

## PLAINTIFF'S MOTION

The plaintiff seeks to be excused from Fed. R. Civ. P. 37(c)(1)'s self-executing sanction "to the extent that Plaintiff's expert witness responses are deficient, pursuant to Fed. R. Civ. P. 26(e) to permit Plaintiff to serve/to have served a supplemental expert witness response, and to extend the time to complete discovery." The plaintiff maintains that any deficiencies in its

5

expert disclosures are harmless because the defendant "had all of the information in its files upon which Plaintiff's experts based their opinions." According to the plaintiff, it "diligently attempted to address" the deficiencies asserted by the defendant by providing the "supplemental response on Friday, January 4, 2019, followed by providing signatures of the experts to same on January 8, 2019." The plaintiff contends that "[w]ithout the testimony of Plaintiff's experts, Plaintiff may be unable to prove its prima facie case. . . . Should Defendant raise any issue about an item that its experts had not been previously apprised, we suggest that a short continuance/extension could ameliorate any issue." Concerning untimeliness of the disclosure, the plaintiff "asserts that it has at all times sought to timely comply" and to address any expert disclosure deficiencies "quickly."

The plaintiff contends that Ogur and Laracuente are expert witnesses who do not need to prepare reports because the plaintiff "did not initially engage any of the witnesses named in its Expert Disclosure to be Expert Witnesses, but rather to assist in mitigating and repairing the damage to Plaintiff's property." The plaintiff maintains that the defendant received, "during the claims process," "[e]ach and every invoice, plan and item of work done which forms the basis for Plaintiff's claim," "save for the revised scope of loss provided November 30, 2018."

In support of its motion, the plaintiff submitted a declaration with exhibit Nos. 1-9 by Karel, dated June 18, 2019, stating, inter alia: (1) "the disclosure[s by] Plaintiff's expert witnesses are provided [pursuant to] Rule 26(2)(C) and not Federal Rule 26(2)(B)[2]"; (2) "[n]one of Plaintiff's witnesses were retained or specifically employed to provide expert testimony"; (3) "none of such witnesses have duties as an employee of Plaintiff to regularly provide testimony"; (4) "[d]ue to the rush to provide the expert witness response by the due date for such

---
[2] The Court assumes that Karel is referring to Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Civ. P. 26(a)(2)(C), since no "Federal Rule 26(2)(C)" and "Federal Rule 26(2)(B)" exist.

6

response, I did not fully review what was required for the expert witness responses"; (5) "I was on vacation" and "did not receive Defendant's missive concerning alleged deficiencies in the response until January 2, 2019"; (6) "I then contacted our experts and expeditiously provided a supplemental response to Defendant's counsel on Friday, January 4, 2019, followed by providing signatures of the experts of same on January 8, 2019"; and (7) "[t]he only retention by the experts, apart from the services that they were hired to perform prior to litigation, was to prepare the revised scope of damages and repairs. For such reason, we provided such report of Freedom and IPAC to Defendant." Karel identified the following exhibits to his declaration: (a) Exhibit No. 1, the defendant's January 14, 2019 subpoena to Michael Palmiotto; (b) Exhibit No. 2, "[t]he initial expert witness response"; (c) Exhibit No. 3, the plaintiff's "supplemental response"; (d) Exhibit No. 4, "the joint report" signed by Ametaj; (e) Exhibit No. 5, "Defendant's expert witness responses"; (f) Exhibit No. 6, "portions of files produced by Defendant, bate-stamped 'Travelers', and from Plaintiff's adjuster, bate-stamped 'SETTLEFIRE')"; (g) Exhibit No. 7, documents produced "by Freedom"; (h) Exhibit No. 8, "some of the emails contained in Exhibit 9"; and (i) Exhibit No. 9, "email exchanges with Defendant's adjuster, Linton and Defendant's present counsel, Wystan Ackerman from August 2007."

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION

The defendant repeats the same arguments made in its motion to strike. Moreover, it contends that the plaintiff failed in its motion to provide any valid justification for failing to serve an appropriate expert disclosure in the first place because, in his June 18, 2019 declaration, the plaintiff's attorney, Karel, stated that "Plaintiff needed to rush to timely provide its November 30, 2018 expert response by the due date" and he "did not fully review what was required for the expert witness responses." As a result, the defendant asserts, the plaintiff

"haphazardly compiled an expert disclosure that fell far short of complying with the requirements of Fed. R. Civ. P. 26"; thus, any harm to the plaintiff is a result of its strategic decisions in this action. The plaintiff's contention that its experts need not prepare an expert report because they were not "initially" engaged to be expert witnesses should be rejected because, "[i]f credence is given to Fordec's argument, parties to a lawsuit could avoid the requirements of Rule 26 altogether by retaining [their] experts prior to the commencement of litigation." Moreover, "none of the witnesses identified by Fordec are [its] employees"; instead, each has been retained specifically to provide expert testimony on the plaintiff's behalf. According to the defendant, the plaintiff's expert disclosures make clear that the plaintiff "intends to have its experts testify about opinions that extend beyond the scope of their pre-litigation work."

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION

The plaintiff repeats the same arguments made in its motion. Furthermore, the plaintiff contends that "[t]he only expert hired by Plaintiff specifically to address Defendant's positions who could be considered at all to come within [Fed. R. Civ. P. 26(2)(B)] is Ronald Ogur, P.E." The plaintiff asserts:

> IPAC, by its engineers John Walsh and Cynthia Laracuente, and Freedom by Aranit Ahmetaj, performed their work and services for Plaintiff as part of their regular duties. Such work and actions herein, as evidenced by their estimates, invoices, and emails reflect that such "experts" performed such services and work to clear the building of vehicles, to stabilize the building, and in efforts to plan for the repair and reconstruction of the building. Such work by such experts would have been performed regardless of whether or not there was any litigation. The joint report of IPAC and Freedom, provided to Defendant on November 30, 2018 with Plaintiff's expert disclosure was prepared specifically for this litigation and for which Plaintiff provided such experts' report. Such details the scope of work and costs to repair the premises as Plaintiff believes [sic] covered by the policy of insurance. In that such report was specifically prepared for the litigation Plaintiff provided Defendant within [sic] their joint report and had IPAC and Freedom sign same as their report. (Karel Decl. Ex. 1).

The plaintiff asserts that "there was no attempt to sandbag Defendant or to gain any procedural advantage" and the preclusion sanction would be draconian. According to the plaintiff,

> Defendant contests Plaintiff's expert's entitlement to testify about mitigating and repairing the damages to Plaintiff's property. Such is exactly the work detailed in the plans, reports, and communications exchanged with Defendant and its representatives throughout the attempted adjustment of the claim. . . . Herein, it cannot be said that Defendant was not provided a "straightforward summary of facts and opinions."

Moreover, the initial expert witness response "put Defendant on notice of virtually every opinion upon which Walsh was and is expected to testify. Similarly, Defendant was advised of the scope of the opinions of Ms. Laracuente, Mr. Ahmetaj, and of Mr. Ogur whose letter report was as well provided with Plaintiff's initial expert disclosure. (Haas Decl. Ex. B)." Since the defendant was provided with all materials upon which the experts based their opinions, "there are no surprises. Plaintiff clearly set forth the opinions of its experts, their qualifications, their hourly rates, and the facts and materials upon which they based their opinions. Such were all known to Defendant." The plaintiff contends that "[t]he minor additions as regards the facts and opinions of the IPAC witnesses cited in the Supplemental Disclosure were provided in an effort to not surprise Defendant" and "Defendant's expert witness responses reference Plaintiff's expert witness response, and specifically discuss the materials and documents provided to Defendant and its experts." However, "Defendant elected to forego taking the examinations of Plaintiff's experts apparently in order to make its instant motion. During such examinations parties always learn new facts that were not set out in the expert disclosures." The plaintiff contends that its supplemental expert disclosure does not prejudice the defendant and precluding expert testimony is not warranted.

9

## DEFENDANT'S REPLY

The defendant asserts that "[n]either Fordec's failure to manage its time, nor its attorney's failure to read and comprehend the Federal Rules prior to the production of Fordec's expert disclosure constitutes a valid excuse to avoid sanctions. To the contrary, these 'excuses' actually support an award of sanctions." The plaintiff's self-serving contention that "there was no attempt to sandbag Defendant or gain any procedural advantage" "adds nothing to Fordec's defense of this motion as Fordec's intentions are irrelevant." According to the defendant, if credence was given to the plaintiff's argument that "producing over 1,000 pages of material" constitutes a "straightforward summary of facts and opinions," any party "would be able to evade the requirements of the Rule 26 by simply producing the documents that its expert intends to base his/her opinion upon."

The defendant contends that, although the plaintiff identified Ametaj as a Rule 26(a)(2)(B) expert in its opposition to the defendant's motion, the plaintiff "now argues that he is no such expert. Instead, Fordec claims that 'the only expert hired by Plaintiff specifically to address Defendant's positions who could be considered at all to come within [Rule 26(a)(2)(B)] is Ronald Ogur, P.E.'" However, by the plaintiff's own admission, Ametaj is a Rule 26(a)(2)(B) expert, but he did not provide an appropriate expert report and the plaintiff "cannot now backtrack on this position by claiming that he is not actually an expert who needed to provide a report." According to the defendant, "it is clear that each of the four witnesses identified in Fordec's expert disclosure [is] in fact Rule 26(a)(2)(B) witness[], and there is no support for Fordec's claims otherwise." The defendant asserts:

> The "joint report" referenced by Fordec, however, was initially provided only as Mr. Ogur's expert report, and was then later "amended" to identify that it was being

provided jointly as an expert report on behalf of Mr. Ogur and Mr. Ahmetaj. At no time prior to the submission of Fordec's opposition had Fordec informed Travelers that Mr. Walsh and Ms. Laracuente played any role in preparing the "joint report," as such a claim flies in the face of Fordec's position that they are not experts who were retained pursuant to Rule 26(a)(2)(B). This significant admission by Fordec provides further support for Travelers' position that each of the four witnesses should have been identified as [Rule] 26(a)(2)(B) witnesses, and there is no excuse why they were not. The gamesmanship by Fordec with respect to the identification of its experts, and compliance with the Federal Rules was wholly unnecessary and served no purpose other than to frustrate Travelers' efforts to defend itself against the action. Accordingly, sanctions are warranted.

## PLAINTIFF'S REPLY

The plaintiff contends:

As regards Freedom and Aranit Ahmetaj, Plaintiff offers that such entity and individual performed the work and services on its invoices, and provided the estimates for the pricing on [sic] the November 30, 2018 joint report. The entire subject matter of Mr. Ahmetaj's expert opinion testimony is that the pricing therein is and was fair and reasonable for the pricing of work and materials as of the time of such work. Such was set forth in the disclosures provided to Defendant on November 30th. There is and was no surprise.

The plaintiff urges the Court "to afford a continuance to cure deficiencies in the expert disclosure, to permit Defendant, if it chooses to examine Plaintiff's experts and to permit this matter to be determined on its merits."

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides:

(2) *Disclosure of Expert Testimony*.
(A) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-- prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

11

(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.
(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
(ii) a summary of the facts and opinions to which the witness is expected to testify.
(D) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
(i) at least 90 days before the date set for trial or for the case to be ready for trial; or
(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.
(E) *Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2).

Rule 26 of the Federal Rules of Civil Procedure also provides:

(e) Supplementing Disclosures and Responses.
(1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
(B) as ordered by the court.
(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e).

Rule 37 of the Federal Rules of Civil Procedure provides:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

Since "preclusion of an expert report can be a harsh sanction," in determining whether preclusion is warranted, courts consider: (1) "the reasons for the delay in providing the evidence"; (2) "the importance of the evidence precluded"; (3) "the prejudice to the opposing party from having to address the new evidence"; and (4) "the possibility of a continuance." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (citation omitted).

## APPLICATION OF LEGAL STANDARD

Karel's statements, in his January 18, 2019 declaration served on the defendant after the November 30, 2018 and supplemental expert disclosures were served, that: (a) the expert disclosures of the plaintiff's witnesses were provided pursuant to Fed. R. Civ. P. 26(a)(2)(C) rather than Fed. R. Civ. P. 26(a)(2)(B); and (b) "[n]one of Plaintiff's witnesses were retained or specifically employed to provide expert testimony" are contradicted explicitly by the plaintiff's November 30, 2018 and supplemental expert disclosures, signed by Karel, which identify Walsh and Ametaj as "Witnesses Who Must Provide a Written Report Pursuant to Rule 26(a)(2)(B)"

13

and specify, in the supplemental disclosures, compensation and fees that Walsh, Ametaj, Ogur and Laracuente charge the plaintiff, including for "Study," "Deposition/Trial" and "report generation." Karel states that the plaintiff's experts are not the plaintiff's employees and they were retained by the plaintiff, "apart from the services that they were hired to perform prior to litigation," to perform services in this litigation, namely, "to prepare the revised scope of damages and repairs."

The plaintiff's November 30, 2018 and supplemental disclosures state that Walsh and Ametaj are "witnesses who must provide a written report pursuant to Rule 26(a)(2)(B)." However, Walsh and Ametaj failed to provide a written report(s) that contains, as required by Fed. R. Civ. P. 26(a)(2)(B): (a) a complete statement of all opinions each witness will express and the basis and reasons for them; (b) the facts and data considered by each witness in forming the opinions; (c) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (d) a statement of the compensation to be paid for the study and testimony in the case. Additionally, Ametaj failed to provide: (1) any exhibits that will be used to summarize or support his opinions; and (2) his qualifications, including a list of all publications authored in the previous 10 years. Neither Walsh nor Ametaj "prepared and signed" the November 30, 2018 expert disclosure; it was signed by the plaintiff's attorney, Karel. Handwritten notes included in the November 30, 2018 expert disclosure are not referenced or explained anywhere by Walsh or Ametaj, although they appear to be signed by Walsh. Contrary to Karel's statement in his declaration in support of the motion that the experts were retained "to prepare the revised scope of damages and repairs," the November 30, 2018 expert disclosure states that Walsh "is expected to testify," inter alia, "about the conditions of the premises known as 3000 Jerome Avenue, Bronx, New York (the 'Premises') and the causation of the damages

sustained at the Premises as a result of the loss of February 19, 2017 that is the subject of the claim of insurance submitted by Plaintiff to [the defendant] at issue in this lawsuit." The November 30, 2018 expert disclosure shows that Walsh is expected to testify beyond the purported "revised scope of damages and repairs," including about the causation of the damages sustained at 3000 Jerome Avenue, Bronx, New York.

The November 30, 2018 expert disclosure states that Ametaj is expected to testify, inter alia, "about the condition of the premises known as 3000 Jerome Avenue" and "the damages sustained at the Premises and certain necessary work pertaining to the loss of February 19, 2017 that is the subject of the claim of insurance" at issue and "that the costs and charges for all repairs, construction and/or reconstruction and remediation performed at the premises were fair and reasonable, based on his knowledge and experience of pricing for similar work." Although concerning Ametaj, the November 30, 2018 expert disclosure states that he "is expected to testify in accordance with the attached report," no report prepared and signed by Ametaj was included in the November 30, 2018 expert disclosure.

The November 30, 2018 expert disclosure states that Ogur and Laracuente are "witnesses who do not provide a written report pursuant to Rule 26(a)(2)(c)." According to the November 30, 2018 expert disclosure, Ogur is expected to testify, inter alia: (1) "about the conditions of the premises known as 3000 Jerome Avenue"; (2) "the causation of the damages sustained at the Premises as a result of the loss of February 19, 2017 that is the subject of the claim of insurance" at issue in this action; and (3) "that the WJE report stated the cause of the collapse was a concrete encased double steel girder that failed at the girder to column connection – both encased in concrete, therefore, the cause of the collapse would not been [sic] visually evident to the owner so that the necessity for repair would not be apparent." Laracuente is expected to testify

about, inter alia, "the conditions of the premises known as 3000 Jerome Avenue," "the damages sustained at the Premises as a result of the loss of February 19, 2017 that is the subject of the claim of insurance" at issue in this action and "her role as the administrator of all of the work performed at the Premises."

The supplemental expert disclosures indicate that Walsh, Ametaj, Ogur and Laracuente were each retained to provide expert testimony in this case and contain statements about compensation to be paid for the study and expert testimony in this case, pursuant to Fed. R. Civ. P. 26(a)(2)(B). None of the four expert witnesses provided, in the November 30, 2018 and supplemental disclosures, her or his opinions and the bases and reasons for them or the facts or data considered in forming them, as required by Fed. R. Civ. P. 26(a)(2)(B). Each of the four expert witnesses signed the supplemental expert disclosures and stated: "I assisted in the preparation of the response concerning my expected expert testimony," without explaining the extent and nature of the assistance and in contravention of Fed. R. Civ. P. 26(a)(2)(B)'s requirement that the retained expert prepare and sign a written report. The plaintiff's supplemental disclosures do not include any "additional or corrective information [that] has not otherwise been made known to the other parties during the discovery process or in writing," as required by Fed. R. Civ. P. 26(e) governing supplemental disclosures and responses, and the plaintiff does not contend so. See Cedar Petrochemicals, Inc., 769 F. Supp. 2d at 278 ("If an expert's report 'does not rely [on] any information that was previously unknown or unavailable to him,' it is not an appropriate supplemental report under Rule 26[e].") (citation omitted).

The Court finds, based on the record evidence, that: (a) each, Walsh, Ametaj, Ogur and Laracuente, is a witness who must prepare and sign a written report pursuant to Fed. R. Civ. P. 26(a)(2)(B), because each was retained or specially employed to provide expert testimony in this

case; (b) the plaintiff's November 30, 2018 expert disclosure is deficient because it does not comply with Fed. R. Civ. P. 26(a)(2)(B); and (c) the plaintiff's supplemental expert disclosures are deficient because they do not comply with Fed. R. Civ. P. 26(e). Thus, the plaintiff failed to comply with Rules 26(a) and 26(e) of the Federal Rules of Civil Procedure.

Whether Failure Was Substantially Justified

Karel stated in his June 18, 2019 declaration in support of the plaintiff's motion that, "[d]ue to the rush to provide the expert witness response by the due date for such response, I did not fully review what was required for the expert witness responses." Karel admitted by this statement that the deficiencies in the November 30, 2018 expert disclosure are due to his failure to perform his job properly, which does not constitute substantial justification for the failure. Moreover, Karel stated that the reason he "expeditiously provided a supplemental response," on January 4, 2019, "followed by providing signatures of the experts to same on January 8, 2019," was to respond to the "Defendant's missive concerning alleged deficiencies" in the November 30, 2018 expert disclosure, which Karel did not receive until January 2, 2019, because he "was on vacation." None of the excuses provided by the plaintiff for its failure to comply with Fed. R. Civ. P. 26(a) or (e) constitutes substantial justification for the failure. The Court finds that the plaintiff's failure to comply with Fed. R. Civ. P. 26(a) and (e) was not substantially justified to avoid preclusion of expert testimony, as required by Fed. R. Civ. P. 37(c)(1).

Whether Failure Was Harmless

The plaintiff's argument that any deficiencies in its expert disclosures are harmless because the defendant "had all of the information in its files upon which Plaintiff's experts based their opinions," is meritless. As stated above, none of the plaintiff's experts stated her or his opinion(s), the basis(es) and reason(s) for the opinion(s) and the facts or data considered by each

17

expert witness in forming them. The fact that the defendant was in possession of "information in its files upon which Plaintiff's experts based their opinions" is meaningless in the absence of the opinions of each expert and identification of the "facts or data considered by the witness in forming" the opinions and any exhibits that will be used to summarize or support the opinions. As neither the November 30, 2018, nor the supplemental expert disclosures include a written report by each expert prepared and signed by that expert and they do not identify the experts' opinions, the bases and reasons for them, the facts or data considered by the witnesses in forming them and any exhibits that would be used to summarize or support them, as required by Fed. R. Civ. P. 26(a)(2)(B), the defendant will be highly prejudiced if it is required to accept and rely on these disclosures because it will be left to guess about the missing information and will be unable to prepare for and conduct a meaningful examination of the plaintiff's expert witnesses.

The plaintiff seeks a continuance to correct the deficiencies in its expert disclosures without providing substantial justification for the continuance because, admittedly, the only reasons the plaintiff's November 30, 2018 expert disclosure was deficient are its attorney's "rush to timely provide" it and his lack of familiarity with "what was required for the expert witness responses." Karel's attempt to correct the deficiencies in the plaintiff's November 30, 2018 expert disclosure noted by the defendant by submitting supplemental expert disclosures was unsuccessful because, apart from not complying with Fed. R. Civ. P. 26(e), the supplemental expert disclosures also failed to correct the previous deficiencies and to comply with Fed. R. Civ. P. 26(a)(2)(B). The plaintiff's submissions in connection with its motion and the defendant's motion are replete with self-serving unsupported contentions, contain unexplained inconsistencies and demonstrate counsel's lack of understanding of the Federal Rules of Civil Procedure, suggesting that any continuance may result in a further delay of this action, causing

18

significant prejudice to the defendant. In the circumstance of this case, the Court finds that a continuance is not warranted and no lesser sanction than preclusion of expert testimony is warranted.

## CONCLUSION

For the foregoing reasons: (1) the defendant's motion to strike the plaintiff's expert disclosures and preclude expert witness testimony, Docket Entry No. 65, is granted; and (2) the plaintiff's motion for an order "confirming that Plaintiff has complied with all FRCP expert disclosure, alternatively granting Plaintiff leave to serve an Amended/Supplemental Expert Disclosure," Docket Entry No. 67, is denied.

Dated: New York, New York
August 14, 2019

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE