USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/28/20__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | |
|---|---|
| **FORDEC REALTY CORP.,** | |
| Plaintiff, | |
| -against- | 1:18-cv-00085 (ALC) |
| | <u>OPINION AND ORDER</u> |
| **TRAVELERS EXCESS AND SURPLUS LINES CO. et al,** | |
| Defendants. | |

------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Before the Court are objections to Judge Fox's Report and Recommendation ("R&R") recommending that Plaintiff Fordec Realty Corp's motion for partial summary judgment be denied and Defendant Travelers Excess and Surplus Lines Company's motion for summary judgment be granted. For the reasons that follow, I adopt Judge Fox's R&R in its entirety.

## BACKGROUND

I assume familiarity with the factual and procedural background of this case, as laid out more fully in Judge Fox's most recent and former R&Rs. I discuss only background relevant to resolving the objections before me.

This case concerns a dispute over the scope of coverage provided by an insurance policy Travelers issued to Fordec. The policy insured a parking garage located at 3000 Jerome Avenue, Bronx, New York, for losses and damage for the period of December 10, 2016 through December 10, 2017, with building coverage in at least the amount of

$40,841,309. (ECF No. 1-1, Compl. ¶ 4). On approximately February 19, 2017, the garage partially collapsed, sustaining damage. (*Id.* ¶ 7). Fordec filed a claim with Travelers. Travelers denied the claim based on its position that the policy did not cover the cause of the garage's damage. (*Id.* ¶ 8; Denial Letter at 1).

Relevant here, the Policy contains the following exclusions:

> **D. EXCLUSIONS**
> 1. The Company will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
> **j. COLLAPSE OF BUILDINGS**
> Collapse of buildings meaning an abrupt falling down or caving in of a building or substantial portion of a building with the result being that the building or substantial portion of a building cannot be occupied for its intended purpose.
>> (1) This exclusion will not apply to collapse of buildings if the collapse is caused by one or more of the following:
>>> (a) A "specified cause of loss";
>>> (b) Decay or insect or vermin damage that is hidden from view, unless the presence of such decay or insect or vermin damage is known to the insured prior to the collapse;
>>> (c) Weight of people or personal property;
>>> (d) Weight of rain that collects on a roof;
>>> (e) Use of defective material or methods of construction, remodeling or
>>> renovation if the collapse occurs during the course of the construction,
>>> remodeling or renovation. However, if the collapse occurs after the
>>> construction, remodeling or renovation is complete and is caused in
>>> part by a cause of loss listed in j.(1)(a) through (d) above, the Company will be liable for loss or damage caused by the collapse even if use of defective material or methods in construction, remodeling or renovation contributes to the collapse.
>
>> In the event collapse results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage by that Covered Cause of Loss.

2

> . . .
>
> 2. The Company will not pay for loss or damage caused by or resulting from any of the following:
>
> . . .
>
> c.  (1) Wear and tear or depletion;
> (2) Rust, corrosion, erosion, fungus, decay, deterioration, wet or dry rot, mold, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;
> (3) Settling, cracking, shrinking, bulging or expansion;
>
> . . .
>
> However, in the event that an excluded cause of loss that is listed in 2.c.(1) through (6) above results in a "specified cause of loss," the Company will pay for the loss or damage caused by that "specified cause of loss."

(ECF No. 92-6, Policy at 8–11).

As it explained in its denial letter, Travelers retained the engineering firm WJE Engineers & Architects, P.C. to investigate the cause of the collapse. WJE determined that "the collapse was precipitated by complete corrosion of the corners of the two connection angles" and "due to rusting (corrosion)." (ECF No. 1-1, WJE Report at 6). As Judge Fox explained in his R&R, throughout the course of this litigation, Fordec conceded repeatedly that rust and corrosion caused the collapse. (R&R at 17). Based on this concession, Travelers moved for summary judgment, arguing that Policy § D(2)(c)(2) prevents coverage.

In its opposition and brief in support of partial summary judgment, Fordec relies on Policy § D(1)(j)(b) to argue that because the rust and corrosion that caused the collapse was "hidden from view," Travelers still must provide coverage. At the very least, Fordec argues that there is "ambiguity" in the policy that must be resolved against Travelers. (ECF Nos. 91, 101). Specifically, Fordec argues that if the decay hidden from view exception does not apply to the rust/corrosion exclusion in addition to the collapse

3

exclusion, it essentially is superfluous as it is unlikely that a collapse caused by hidden decay would not be caused by decay encompassed by § D(2)(c)(2). (ECF No. 109 at 3).

Travelers responds that even if Fordec could prove that the hidden decay exception applies, which it cannot, that exception would negate only the Policy's collapse exclusion, leaving the rust/corrosion exclusion in full force. (ECF No. 84). In other words, if Fordec could make the required showing of hidden decay, it perhaps could argue successfully that Travelers may not deny coverage solely based on the fact that the damage to the parking garage was caused by collapse. However, because the collapse was caused by rust/corrosion, the damage would still not be covered by the Policy because of the entirely separate exclusion in § D(2)(c)(2). This provision, Travelers contends, is unambiguous.

Judge Fox recommended ruling for Travelers after reaching the following conclusions:

> Based on the following: (1) Section D "EXCLUSIONS," paragraph 2.c.(2) of the policy, is clear and unambiguous; (2) the plaintiff admitted and it is undisputed that the partial collapse of the subject property was caused by rust; (3) Section D "EXCLUSIONS," paragraph 2.c.(2) of the policy does not contain an exception for "decay 'hidden from view'"; and (4) the exception to the collapse of buildings exclusion, contained in Section D, "EXCLUSIONS" paragraph 1,j(1)(b) of the policy, does not apply to the rust exclusion, contained in Section D "EXCLUSIONS," paragraph 2.c.(2) of the policy, the Court finds that the defendant established that Section D "EXCLUSIONS," paragraph 2.c.(2) of the policy applies in this case and it is not subject to any other reasonable interpretation.

(R&R at 18).

Fordec objects to Judge Fox's R&R, specifically to his finding that the Policy is ambiguous. Fordec asserts the same argument it raised in summary judgment briefing:

4

that the interplay between the "Insuring Agreement," the policy's exclusions for rust and corrosion, and the exception to the exclusion for decay that is "hidden from view "created at worst for Plaintiff an ambiguity in the policy which should have resulted in a finding of coverage for Plaintiff.

(ECF No. 125 at 1).

## LEGAL STANDARD

I. Reviewing the R&R

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made" by a magistrate judge in an R&R. 28 U.S.C. § 636(b)(1). Where a party timely and specifically objects, the court conducts a *de novo* review of the contested portions of the R&R. "However, 'when a party makes only conclusory or general objections, or simply reiterates his original arguments," the court reviews the report and recommendation strictly for clear error. S*yed Mohammad Aftab Kartm, MD, Faans v. New York City Health and Hospitals Corp., et al*, No. 17 Civ. 6888, 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020) (quoting *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014)."

**II. Summary Judgment**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (quoting Anderson, 477 U.S. at 248).

5

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P.*v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted). Courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry* v. *Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quotation omitted).

## DISCUSSION

I agree with Judge Fox that there is no ambiguity in the Policy. As Judge Fox explained, Fordec failed in summary judgment briefing to explain why the Policy's exception to the collapse exclusion creates ambiguity with respect to its rust/corrosion exclusion, which contains no such exception. Fordec does not provide clarity on this point in its objection, nor does it offer any legal authority as to why the Policy should be interpreted as it suggests.

Under New York law, insurance "[p]olicy exclusions are to be read seriatim and, if any one exclusion applies, there is no coverage since no one exclusion can be regarded as inconsistent with another." *Garson Mgt. Co. v. Travelers Indem. Co. of Ill.*, 300 A.D.2d 538, 539–40 (N.Y. 2d. Dep't 2002) (internal citations omitted); *see Catucci v. Greenwich Ins. Co.*, 37 A.D.3d 513, 514 (N.Y. 2d Dep't 2007) (internal citations omitted); *see also Tudor Ins. Co. v. Golovunin,* 2013 WL 5437025, at *6 (E.D.N.Y. Sept. 27, 2013) (internal citations omitted) ( "…one exclusion is not rendered ineffective by an exception to another exclusion, because exclusions in policies of insurance must be read *seriatim*, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another.").

6

Fordec attempted to distinguish above-cited cases *Garson* and *Catucci* in its summary judgment briefing. In *Garson*, Travelers' Illinois branch "issued a commercial property insurance policy to plaintiff, Garson Management Company, LLC…which contained exclusions for the costs of correcting deterioration and corrosion of covered property." 200 A.D. 2d at 538–39. When a "chunk of concrete" fell from the covered property, also a garage, plaintiff "removed the concrete encasing the garage's structural steel beams, and discovered that they were severely corroded." *Id.* at 539. Plaintiff sought reimbursement after repairing the damage, which defendant denied pursuant to the corrosion exclusion. *Id.* Plaintiff argued that coverage was "afforded under a separate policy provision that excludes losses caused by building or structure collapse unless the collapse is caused by 'hidden decay.'" *Id.* The appellate court affirmed the New York Supreme Court's ruling for defendant, explaining that the exception to the collapse exclusion could not be applied to the separate corrosion exclusion. *Id.* at 539–40.

Fordec argues that this case is distinguishable, because here, there was in fact a collapse. Fordec attempts to distinguish *Catucci*, in part on this basis as well. (ECF No. 109 at 4–5). Although this distinction makes the relevant collapse exception applicable in this case in a way it was not in others, it does not diminish the applicability of the rust/corrosion exclusion, which unambiguously denies coverage when the damage was caused by rust or corrosion to the parking garage. As discussed, this exclusion applies with or without collapse and contains no exception.

An exclusion cannot be plucked from one section of a policy and applied to an independent section to render the latter section "ambiguous" or inconsistent.

7

## CONCLUSION

Judge Fox's R&R is adopted in its entirety. Fordec's motion for partial summary judgment is DENIED. Travelers' motion for summary judgment is GRANTED.

**SO ORDERED.**

Dated: New York, New York
September 28, 2020

_____
Hon. Andrew L. Carter, Jr.
United States District Judge